[Cite as *State v. Hudson*, 2012-Ohio-100.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 95892

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEMARIO HUDSON

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537809

**BEFORE:**    Jones, J., Stewart, P.J., and E. Gallagher, J.
**RELEASED AND JOURNALIZED:**    January 12, 2012

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Robert Botnick
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Demario Hudson, appeals from his judgment entry of conviction. We affirm.

I. Procedural History and Facts

{¶ 2} Demario and his brother, Marlon Hudson, were jointly indicted in three separate cases, which were consolidated at the trial court level.[1] The charges resulted from three incidents that occurred in January 2010, where the defendants broke into houses.

{¶ 3} In the first incident, a 26-year-old single mother was present. Montana "guarded" the door, while Demario and Marlon rummaged through her house. Marlon had a sawed-off shotgun and Demario had a revolver. At some point during the crime, the victim's three-year-old daughter woke up and started crying when she saw the defendants. The

---

[1]A third defendant, Montana Hudson, was also indicted.

defendants told the mother to get her under control. The defendants stole a number of the woman's personal effects.

**{¶ 4}** The second incident occurred the following day. The victim, a college student home for winter break, was getting out of her car at her home when Marlon approached her with a sawed-off shotgun; Demario approached with a pistol. The defendants entered her home. The victim's father was present and the defendants forced him onto the ground. The victim's 17-year-old sister was also present; she remained hiding in a bedroom.

**{¶ 5}** Marlon forced the victim into another bedroom and demanded money. When the victim responded that she did not have any, Marlon said he did not believe her and made her disrobe. The defendants stole numerous personal effects from the home.

**{¶ 6}** The third incident occurred approximately one week later. Two females and one male were together in a car. One of the females was being dropped off. As the car was stopped so that the one passenger could get out, Demario, Marlon, and Montana ran up to the car and tried to force the male out. The defendants had weapons. The man ran away and the two women ran into their house. The defendants caught up with the man and forced him to the ground. The victim had a "doo-rag" on his head, which the defendants pulled down over his face. They then stripped him down to his underwear and socks. The defendants forced the victim into their vehicle, drove him to another location, and dropped him off in his underwear and socks.

**{¶ 7}** One person involved in each of the incidents was able to see that the defendants were in a dark-colored Plymouth Breeze. Demario and Marlon are brothers and their mother was the owner of a black Plymouth Breeze. Some of the victims also saw that the defendants were wearing rubber gloves.

**{¶ 8}** After the defendants were apprehended, several of the items the victims reported missing were found inside the Plymouth Breeze along with the same kind of rubber gloves the defendants used during the commission of the crimes. Other items reported missing by the victims were recovered during the execution of search warrants at the defendants' homes. More rubber gloves like the ones used during the commission of the crimes were found in Marlon's living quarters.

**{¶ 9}** Marlon and Demario pleaded guilty to eight first-degree felonies and three three-year firearm specifications. They were each sentenced to a 31-year prison term.

**{¶ 10}** Demario now raises the following assignments of error for our review:

**{¶ 11}** "I.   The trial court did not comply with Crim.R. 11 and defendant's plea was not knowingly, intelligently, and voluntarily made.

**{¶ 12}** "II.   The trial court erred in not permitting the appellant to obtain counsel of his choice or [informing him of] the ramifications of joint representation.

**{¶ 13}** "III.   Defendant-appellant was denied the effective assistance of counsel.

**{¶ 14}** "IV.   The trial court erred in imposing a term of incarceration that is not proportionate to similarly situated offenders."

II.   Law and Analysis

A.   The Plea and Right to Counsel

**{¶ 15}** For his first assignment of error, Demario contends that the trial court did not comply with Crim.R. 11 and his plea was not knowingly, intelligently, and voluntarily made. For his second assigned error, Demario contends that he was denied his right to assistance of counsel at the hearing. The two contentions are interrelated and will be considered together.

**{¶ 16}** Crim.R. 11(C)(2) provides that in felony cases the court may refuse to accept and shall not accept a plea of guilty without first addressing the defendant personally and doing all of

the following:

{¶ 17} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶ 18} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶ 19} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶ 20} A trial court must strictly comply with the Crim.R. 11(C)(2)(c) requirements that relate to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. Under the more stringent standard for constitutionally protected rights, a trial court's acceptance of a guilty plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights "in a manner reasonably intelligible to that defendant." *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph two of the syllabus.

{¶ 21} With respect to the nonconstitutional requirements of Crim.R. 11, set forth in Crim.R. 11(C)(2)(a) and (b), reviewing courts consider whether there was substantial compliance with the rule. *Veney*, ¶ 14-17. "Substantial compliance means that under the totality of the

circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue. *Veney*, ¶ 17.

{¶ 22} Two attorneys, Stanley Josselson and Valentine Schurowliew, were present at the plea hearing for the defense. In both the first and second assigned errors, Demario contends that it was not clear which attorney represented him and which represented Marlon. Demario further contends that having one attorney for two codefendants "raises serious [*Bruton*][2] issues and has a direct effect on the Defendant's right to have independent counsel and the rights/abilities of each defense counsel in that regard."

{¶ 23} The record before us indicates that as the parties were in the process of jury selection, the defendants indicated that they wished to accept the plea offered by the state. As the assistant prosecuting attorney attempted to place the specifics of the state's offer on the record, Marlon had an "outburst." Attorney Schurowliew informed the court that he had had particular "difficulty communicating" with Marlon, so he generally dealt with Demario. Schurowliew indicated that he worked for attorney Josselson, and together they represented both defendants. Josselson confirmed that Schurowliew worked for him and that together they represented both defendants. Josselson also stated that both he and Schurowliew had had communications with both Demario and Marlon. Both attorneys indicated that they had prepared their case and were able to proceed.

---

[2] *Bruton v. United States*, 391 U .S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**{¶ 24}** The court and Marlon then engaged in the following exchange:

**{¶ 25}** "THE COURT: * * * Now, we're at the juncture at trial where the county prosecutor has made an offer. It's my understanding through Mr. Josselson that such an offer has been accepted by you, but if you feel that Mr. Josselson cannot continue in your representation I need you to tell me now?

**{¶ 26}** "MARLON HUDSON: Whatever, man. He said he could go ahead.

**{¶ 27}** "THE COURT: No. You tell me if he can, not what he said. I need to know from you if you feel that he can adequately represent you, and if you think that he can't, I need you to tell me that, too.

**{¶ 28}** "MARLON HUDSON: He said he can.

**{¶ 29}** "THE COURT: Do you feel that he can represent you, yes or no?

**{¶ 30}** "MARLON HUDSON: Yeah.

**{¶ 31}** "THE COURT: Yes?

**{¶ 32}** "MARLON HUDSON: Yeah, man.

**{¶ 33}** "THE COURT: Is it your desire to continue with Mr. Josselson as your lawyer?

**{¶ 34}** "MARLON HUDSON: It don't matter.

**{¶ 35}** "THE COURT: It does matter to the Court, and I need to know from you if it is your desire for Mr. Josselson to represent you?

**{¶ 36}** "MARLON HUDSON: Yes. My mama paid for him.

**{¶ 37}** "THE COURT: Is it your desire to continue with him?

**{¶ 38}** "MARLON HUDSON: Yes."

**{¶ 39}** This appeal was taken by Demario, not Marlon.[3] Demario even acknowledges in his brief that "[t]his appeal concerns Demario Hudson only * * *."[4] Demario did not raise the issue of representation at the trial court level. When asked by the trial court if he was satisfied

---

[3]Marlon has his own appeal, 8th Dist. No. 96435.

[4]Appellant's Brief, p. 1.

with the representation he had received, Demario responded, "[y]es, your honor." In fact, Marlon also responded, "[y]es." Demario cannot now attempt to "backdoor" Marlon's issue as his own. Accordingly, Demario's contention about his representation at the plea hearing raised in the first assignment of error is overruled and the second assignment of error is overruled in toto.

{¶ 40} Demario next contends in his first assignment of error that his plea was not knowingly and voluntarily made because the trial court did not engage in "appropriate discussion with [him] to adequately explain the ramifications" of his belief that he would be sentenced to "no more than 12 years." We disagree.

{¶ 41} The record demonstrates that the assistant prosecuting attorney placed the state's offer on the record and detailed the possible prison terms, fines, and postrelease control sanctions. The state indicated that it would not take a position on sentencing.

{¶ 42} Attorney Josselson stated that he and Schurowliew had had "quite a bit of discussion on these cases" with the defendants and had reviewed their constitutional rights with them, and the defendants wanted to accept the state's offer. The court then proceeded to review the defendants' rights and the possible penalties. When the court questioned the defendants as to whether any threats or promises had been made to them, Marlon responded that "[t]hey said [the sentence] would be 12 years." Demario added, "[t]old me about no more than 12 years." The following exchange then took place:

{¶ 43} "THE COURT: Oh, no. I don't know who — I don't know who could have told you that, but that's not true.

{¶ 44} "DEMARIO HUDSON: That's the only reason why I copped to it.

{¶ 45} "THE COURT: That's not true.

{¶ 46} "DEMARIO HUDSON:    Why?

{¶ 47} "THE COURT:    Your underlying sentence is 9 years,[5] and 3 years would be the minimum sentence, and the Court does not discuss sentence with anybody.   I don't ever tell anybody what I'm going to do."

{¶ 48} The assistant prosecuting attorney and attorney Josselson confirmed that the court never discussed, or made any promises relative to, sentencing with them.   Attorney Josselson clarified that he believed the confusion resulted because counsel informed the defendants that the minimum sentence they could receive under the plea agreement was 12 years and that the state would not contest that.

{¶ 49} After that clarification, the court again questioned Demario, "[t]here's not been any promise made to anybody?"   Demario responded, "[r]ight."   The court questioned Demario three more times about whether he was promised a particular sentence and each time he stated that he was not.   On this record, there was no promise made to Demario and his contention that the court did not engage in appropriate colloquy on the issue is unsupported.

{¶ 50} The court continued with the plea hearing, and when it asked the defendants what their pleas were, both responded "not guilty."   Demario contends that "[a]t this point, it was incumbent upon the court to either have a trial * * * or have defense counsel talk to his clients and make sure they underst[ood] the nature of the plea, the ramifications of the plea deal, and the rights they would be waiving."

{¶ 51} After the defendants indicated that they were not guilty, the court responded, "[a]ll right.   Let's proceed to trial.   If you're not guilty we'll proceed to trial and the jury will find you not guilty."   Immediately thereafter, both defendants responded by saying "I'm guilty."

---

[5]Because of the mandatory consecutive terms for the three-year firearm specifications.

The court questioned them again as to their guilt, and both defendants indicated that they were pleading guilty. The court accepted the pleas as knowingly and voluntarily made.

{¶ 52} On this record, the court fulfilled its duties. The state reviewed the charges and penalties of the convictions in detail; defense counsel indicated that they had had "quite a bit of discussion on these cases" with the defendants, had reviewed their constitutional rights with them, and that the defendants wanted to accept the state's offer; and the trial court engaged in extensive colloquy with the defendants, explaining the charges, potential penalties, and the rights they would be waiving by pleading guilty.

{¶ 53} Accordingly, the plea was knowingly, voluntarily, and intelligently made and the first assignment of error is overruled.

B. Ineffective Assistance of Counsel

{¶ 54} In the third assignment of error, Demario contends that he was denied the effective assistance of counsel. We disagree.

{¶ 55} An attorney who is licensed in Ohio is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965). Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267. Additionally, in fairly assessing counsel's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

{¶ 56} "The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on a claim of ineffective assistance of counsel, Demario must satisfy a two-prong test. First, he must demonstrate that his trial counsel's performance was deficient. *Id*. at 687. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id*. To show prejudice, he must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. *Id*. at 694.

{¶ 57} Demario's ineffective assistance of counsel claim is based on (1) the dual representation; (2) the "promise" of a sentence not more than 12 years; and (3) his twice saying that he was not guilty. We overrule all three contentions for the reasons already discussed.

{¶ 58} In short, representation was not Demario's issue; it was Marlon's, and he is not a party to this appeal. There was no "promise" of any sentence and any confusion regarding the sentence was adequately addressed. And, when Demario stated that he was not guilty, the trial court ended the plea hearing and said that the matter would proceed to trial; Demario, on his own accord, stated that he was guilty and desired to enter such a plea. The court questioned him again, and he again indicated that it was his desire to plead guilty.

{¶ 59} In light of the above, the third assignment of error is overruled.

C. Disproportionate Sentence

{¶ 60} In his final assignment of error, Demario contends that his 31-year sentence is disproportionate to the four-year sentence Montana received for his involvement.

{¶ 61} This court has held that in order to support a contention that a sentence is

disproportionate to sentences imposed upon other offenders, the defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal. *State v. Cooper*, 8th Dist. No. 93308, 2010-Ohio-1983, ¶ 24; *State v. Lang*, 8th Dist. No. 92099, 2010-Ohio-433, ¶ 21; *State v. Edwards*, 8th Dist. No. 89181, 2007-Ohio-6068, ¶ 11. Demario did not raise the issue of proportionality in the trial court and, therefore, he has not preserved the issue for appeal.

{¶ 62} We further note that Demario pleaded guilty to eight first-degree felonies with three three-year firearm specifications, while Montana pleaded guilty to three felonies with no firearm specifications. The two, therefore, were not similarly situated.

{¶ 63} In light of the above, the fourth assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
MELODY J. STEWART, P.J., CONCURS

IN JUDGMENT ONLY